James A. Patten (ID #1191)
Molly S. Considine (ID #13800)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.**
2817 2nd Avenue North, Ste. 300
P.O. Box 1239
Billings, MT 59103-1239
Telephone (406) 252-8500
Facsimile (406) 294-9500
Email: apatten@ppbglaw.com
      mconsidine@ppbglaw.com

Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE:<br><br>KC TRANSPORT, LLC,<br><br>                            Debtor. | Case No. 1:25-bk-10010-BPH<br><br>**DISCLOSURE STATEMENT**<br>**(JULY 23, 2025)** |

## I. INTRODUCTION

*A. Purpose of the Disclosure Statement*

      The Debtor and Debtor-in-Possession, KC TRANSPORT, LLC ("Debtor") has filed a voluntary petition pursuant to Chapter 11, United States Bankruptcy Code.

      The Debtor provides this Disclosure Statement to all its known creditors at this time in order to disclose that information deemed by the Debtor to be material, important, relevant, and necessary for the creditors to arrive at a reasonably informed decision exercising their rights to vote on a Plan of Reorganization submitted herewith and on file with the Bankruptcy Court.

      In general, this Disclosure Statement is intended to provide information to the creditors in order that they can determine whether the Plan of Reorganization is fair. The creditors are entitled to evaluate the Debtor's financial and other information in order to protect their interests. Further, this Disclosure Statement is intended to provide the creditors with the information

necessary to enable the creditors to determine whether the Debtor's *Plan* is feasible. Unless specifically noted, the source of information contained in this Disclosure Statement is provided by the Debtor.

*B. Elements of Confirmation*

Upon approval of this Disclosure Statement, the creditors may vote upon the Plan of Reorganization by completing and filing a ballot with the Bankruptcy Court within the time ordered.

The votes of the creditors are important. The Plan of Reorganization can be confirmed by the *Court* if it is accepted by the holders of two-thirds in amount, and more than one-half in number, of claims in each class voting on the *Plan*. In the event the requisite acceptances are not obtained, the *Court* may nevertheless confirm the *Plan* if at least one class of impaired claims has voted to accept the *Plan* and if the *Court* finds the *Plan* provides "fair and equitable" treatment to the class or classes rejecting it. To be "fair and equitable" within the meaning of the Bankruptcy Code the proposed *Plan* must comply with the Absolute Priority Rule.

The Absolute Priority Rule describes the relative rights of various parties-in-interest in a bankruptcy reorganization including the creditors and the Debtor. It has been described as follows:

Beginning with the topmost class of claims against the Debtor-in-Possession, each class in descending rank must receive full and complete compensation for the rights surrendered before the next class below may properly participate. Thus, the principle is applied as between senior and junior secured creditors, between secured and unsecured creditors, between unsecured creditors and stockholders, between different classes of stockholders, and, of course, between secured creditors as a whole and stockholders. <u>5 Collier's on Bankruptcy</u>, 15th Ed. para 1125.02, p. 1125-8.

As applied to the immediate case, the Absolute Priority Rule requires that the secured claims be paid in full first and the unsecured claims be paid in full next before the Debtor may be reinvested with its property. The Absolute Priority Rule requires the creditors receive the value

of their claims as of the date of *confirmation*; if the payment is made over time, interest must be paid on the claim.

The Absolute Priority Rule may be waived by the creditors if its class accepts a proposed *Plan* that does not meet the requirements of the Rule. If any class does not accept the *Plan*, the Bankruptcy Court must find that the *Plan* meets the Absolute Priority Rule before the *Plan* may be confirmed.

The Absolute Priority Rule is also met if there is substantial new investment into the Debtor as a part of the Chapter 11 Plan or if the proposed plan is a liquidating plan.

The Debtor believes its proposed *Plan* meets the requirements of the Absolute Priority Rule as the *Plan* will pay the claims and post confirmation interest of all creditors in full through periodic payments as described in the *Plan*, and the Debtor will be revested with its assets upon *confirmation*.

*C. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing*

The *Court* has not yet confirmed the *Plan* described in this Disclosure Statement. This section describes the procedures pursuant to which the *Plan* will or will not be confirmed.

1. Time and Plan of Hearing to Confirm Plan

The hearing at which the *Court* will determine whether to confirm the *Plan* will take place on **[insert]**. in the COURTROOM, 4TH FLOOR, JAMES F. BATTIN UNITED STATES COURTHOUSE, 2601 2ND AVENUE NORTH, BILLINGS, MONTANA.

2. Deadline For Voting to Accept or Reject the *Plan*

If you are entitled to vote to accept or reject the *Plan*, vote on the enclosed ballot and return the ballot to the Clerk of Court, 2601 2nd Avenue North, Billings, Montana, 59101. All classes of claims are eligible to vote for or against the *Plan*.

Your ballot must be received by **[insert]** or it will not be counted.

3. Deadline for Objection to Confirmation of the *Plan*.

Objections to confirmation of the *Plan* must be served with the *Court* and served on Debtors' counsel by **[insert].**

4. If you want additional information about the *Plan*, you should contact: James A. Patten, Patten, Peterman, Bekkedahl & Green, PLLC, 2817 Second Avenue North, Suite 300, Billings, Montana 59101; 406-252-8500.

*D. Disclaimer.*

No representations concerning the Debtor, particularly as to its future operations, value of property, or any other matter are authorized by the Debtor except as stated herein. Any representations or inducements made to secure your acceptance which are other than contained in this statement should not be relied upon by you in arriving at a decision, and any such additional representations and inducements should be reported to the counsel for the Debtor who in turn shall deliver such information to the Bankruptcy Court and the United States Trustee for such action as may be deemed appropriate.

The information contained in this Disclosure Statement has not been subject to a certified audit or appraisal. Every reasonable effort has been made to present accurate figures. However, the Debtor is unable to warrant or represent that the information contained herein is without inaccuracy.

## II. SUMMARY OF THE PLAN OF REORGANIZATION

The proposed Plan of Reorganization is based upon the Debtor's desire to pay its creditors in full. A copy of the proposed *Plan* is attached as Appendix No. 1. If the Debtor is liquidated pursuant to the provisions of Chapter 7 of the Bankruptcy Code, it appears that the holders of

*allowed secured claims* on all property will be paid in full, the priority claims will be paid in full, and the holders of general unsecured claims will be paid in full. This calculation is based upon current market value of the Debtor's property reflecting the opinions of the Debtor. The Debtor believes that its *Plan* will provide the best and appropriate payments to its creditors.

The Plan of Reorganization provides for the division of all claims and interests into 7 classes.

In general, the Debtor will pay the administrative claims in full; these *administrative expenses* are estimated as follows:

> Patten, Peterman, Bekkedahl & Green (legal-estimate): $ 34,839.00
>
> U.S. Trustee Quarterly fee: $1922.00

The Debtor's proposed *Plan* will not impair the claims of one of the 8 classes of creditors.

As a part of this *Plan*, the Debtor will assume all executory contracts..

Upon confirmation of the *Plan*, the property of the Debtor shall be revested with the Debtor, subject to the liens and interests of the Class I, II, III, and IV creditors.

Generally, the Plan of Reorganization will pay the secured claims of the Class I, II, III, and IV creditors from the liquidation of such creditors' collateral and through 60 monthly payments of any remaining unpaid claims; the Debtor has obtained an order from the *Court* authorizing the Debtor to sell twelve semi-trucks and twenty-five trailers through an auction to be conducted by the Steffes Group from August 21 through August 28. The Debtor has also received authority to sell six grain-bins, a Caterpillar 299 skid steer, and two light duty trailers which will generate net proceeds of $139,500. In addition, the Debtor has seventeen trailers and two light trucks it will prepare for sale at an auction or by private treaty in the near future, subject to the *Court's* approval after notice and hearing. These sales are expected to significantly reduce the Debtor's

indebtedness, the balance of which will be paid through 60 level monthly payments to the unsecured claims exceeding the amount of $2000.00 and through 12 level monthly payments to the unsecured claims less than $2000.00.

**THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. EACH CREDITOR IS URGED TO READ THE PLAN IN FULL. CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN**.

### III. DEFINITIONS

For the purposes of this Disclosure Statement, the definitions described in Article I of the *Plan* shall have the same meanings herein. All terms defined in the Bankruptcy Code will have the same meaning herein as defined in the Code.

### IV. FINANCIAL INFORMATION

*A. Description of the Debtor's Assets*

The assets and values of the Debtor, as of July 16, 2025, consist of:

- Cash - $30,393
- Receivables - $280,300
- Office furniture, fixtures - $46,906
- Machinery, equipment, and vehicles - $3,381,000
- Real property, mobile home - $392,515

The total value of the Debtors' property is estimated to be $4,131,114

*B. Description of Debtors' Liabilities*

- Wallwork Financial - $107,871
- Yellowstone Bank – $20,582
- Loeb Term Solutions - $1,515,246

- Verdant Commercial Capital – $247,015
- General and priority unsecured - $172,072

The total of the Debtors' liabilities is $2,069,308

*C. Basis for Property Valuation*

The property values are based on the opinions of Debtor.

*D Liquidation Analysis*

A liquidation analysis is to enable each creditor to determine how much it will receive in the event that the Debtor's case is liquidated pursuant to the provisions of Chapter 7 of the U.S Bankruptcy Code. Each creditor may compare the results of a Chapter 7 liquidation with its treatment under the proposed Plan of Reorganization and use that information to determine whether to vote for or against the *Plan*. The Liquidation Analysis is attached hereto as Appendix No.2.

The Liquidation Analysis demonstrates that there are sufficient assets such that on liquidation the secured, priority and unsecured creditors will be paid in full.
In fact, the Liquidation Analysis shows that if only the property constituting collateral for all of the secured claims is liquidated, there will remain a surplus, after payment of the costs of liquidation, trustee's fees, and all the claims, secured, priority, and general unsecured, of over $1,000,000. Under the analysis, all claims in this case will be paid in full in a hypothetical chapter 7 liquidation. That means all claims must be paid in full in this chapter 11 case.

*E. Historic Financial Information*

The Debtor has operated its trucking enterprise since 2007.

The Debtor's gross income for the years 2022, 2023, and 2024 are:

        2022: $8,435,378

2023: $7,743,696

2024: $5,577,003

*F. Debtor's business operations*

From 2007 through June 2017 the Debtor was engaged in oilfield and construction trucking. As the oilfield slowed down starting in 2015, the Debtor looked for other opportunities and on June 28, 2017 the Debtor contracted with Nevada Gold Mines, LLC hauling cement and oxygen within the mine area. That contract was renewed every three years through December 2024. Effective January 1, 2025 the cement hauling contract was terminated; the oxygen hauling contract continues.

The Debtor has, since this case was filed, returned to the oil field and now operates hauling water, crude oil, and other material in the Williston Basin but at a much reduced level than before. The reduction of hauling services will continue post confirmation of a plan. However, the significant surplus of trucks and trailers will be liquidated through private sales approved by the *Court* and a single source live, on-line auction scheduled August 21 through the 28.

## IV. CAUSE OF THIS BANKRUPTCY

The cause of this bankruptcy case was loss of the dry bulk hauling contract at Nevada Gold Mines in Elko, Nevada. The loss of the contract resulted in a significant surplus of trucks and trailers that were financed. The loss of gross income impaired the Debtor's ability to service its debt. This bankruptcy was filed in order that the Debtor could liquidate its surplus property and thereby reduce its debt while continuing to operate in the oil fields of the Williston Basin with a significantly reduced rolling stock inventory.

## VI. DESCRIPTION OF DEBTOR'S BUSINESS OPERATION

As noted the Debtor is returning to the oilfield and construction hauling. The Debtor intends to operate eleven semi-trucks and eight trailers. The remaining equipment will be sold.

## VI. FEASIBILITY OF PLAN

The feasibility of the Debtor's Plan of Reorganization is based upon its liquidation of surplus equipment and the continuing operation of eleven trucks and eight trailers.

The classes of creditors are proposed to be paid as follows:

Class I: Loeb Terms Solutions: the Loeb secured claim will be paid through the liquidation of most or all of its collateral. During the pendency of this case, Loeb appraised its collateral which, using the forced liquidation value, identifies a total value of $2,138,500. "Forced Liquidation Value" is defined in the Loeb appraisal as the auction value. The Debtor intends to liquidate, by auction or otherwise, most of the Loeb collateral, a significant portion through the Steffes Group August auction and additional items later as appropriate and necessary. The claim will be paid from the proceeds of sales of its collateral, made pursuant to 11 U.S.C. § 363, whether by auction or private treaty, and upon completion of all sales, any remaining about due will be paid over 60 months following the *Effective Date* with interest at the *Federal Judgment Rate* to the extent unsecured and with interest at the bank prime loan rate published in Federal Reserve statistical release H.15 as of the date of *confirmation* if secured.

Class II: Yellowstone Bank is secured with a Ford F350 and a 2020 Kenworth T800 truck. Although the Kenworth truck was not appraised by Loeb, other 2020 Kenworth T800 trucks were valued at $85,000. The Ford F350 is valued at $30,000. The forced liquidation values of the Yellowstone Bank collateral demonstrate the Bank's claim of approximately $20,000 will be fully satisfied.

Class III: Wallwork Financial is secured with three 2020 Kenworth T800 trucks. Comparable trucks in the Loeb appraisal have a value of no less than $50,000 each. The Wallwork collateral forced liquidation value appears to be sufficient to satisfy the Wallwork claim of $107,871 in full upon sale. The claim will be paid from the proceeds of sales of its collateral, made pursuant to 11 U.S.C. § 363, whether by auction or private treaty, and upon completion of all sales, any remaining about due will be paid over 60 months following the *Effective Date* with interest at the *Federal Judgment Rate* to the extent unsecured and with interest at the bank prime loan rate published in Federal Reserve statistical release H.15 as of the date of *confirmation* if secured.

Class IV: Verdant Commercial Capital, LLC is secured with a 2024 J&L tank Pnuematic trailer and pup trailer. The value of the trailers is estimated by the Debtor at $200,000; the Verdant Commercial Capital, LLC claim is for $247,015. The Verdant Commercial Capital collateral will be sold with an estimated resulting unsecured claim of $47,015. The unsecured claim will be paid with interest at the *Federal Judgment Rate* over a 60 month period commencing on the *Plan*'s *Effective Date*. Currently the judgment rate is 4.12%.

The amortized payment to Verdant Commercial Capital under the foregoing estimations is $866.79 per month.

Class V: Priority Tax Claims; no priority tax claims have been asserted.

5.01.  Class VI: General unsecured claims exceeding $2000.00. These general unsecured claims, not including any unsecured claim of Verdant Commercial Capital, total $175,650. The monthly payment of these claims is $3238.37. The members of Class VI are: (i) KC Sandcastle LLC (insider); (ii) Keltz Hall (insider); and (iii) Reading Trucks, Inc. General unsecured claims exceeding the amount of $2000.00 shall be paid, commencing on the *Effective*

*Date,* over a 60 month period through level monthly payments with interest at the *Federal Judgment Rate*.

Class VII: General unsecured claims less than $2000.00. These general unsecured claims total $4460. These claims shall be paid, commencing on the *Effective Date,* over a 12 month period through level monthly payments with interest at the *Federal Judgment Rate*. The monthly payment of these claims is $380.01.

Class VIII: General Unsecured Contingent claims: Nancy Hernandez is the only member of this class. Pursuant to a stipulation filed at ECF No. 50, Ms. Hernandez will receive no distribution from the Debtor but will be paid only by the Debtor's insurance carrier.

Attached hereto as Appendix No. 3 is a projected cash flow from the operations of the Debtor. This cash flow shows the projected income and expense will render sufficient net income to make the *Plan* payments

## VII. RELEVANT FACTS

With respect to the Debtor's proposed Plan of Reorganization, it submits the following facts are relevant:

The projected auction proceeds are estimates based on the Loeb appraisal, the Debtor's knowledge of the condition of the trucks and trailers, and the Debtor's knowledge of the market for used construction trucks and trailers.

## VIII. SPECIAL RISK FACTORS

Substantial risk factors are inherent in any Chapter 11 proceeding. If the *Plan* is accepted, it is usually because the *Plan* provides a means by which the claims of creditors can be reasonably satisfied:

The *Plan* is premised on sufficient proceeds being realized from the sale of equipment to satisfy or substantially reduce the secured claims of the creditors. The Debtor's ability to service the unsecured and secured debt will be affected by the success of the currently scheduled auction and any future auctions.

## IX. <u>CONCLUSION</u>

The material provided in this Disclosure Statement is intended to help you in voting on a Plan of Reorganization on an informed basis. If the *Plan* is confirmed, you will be bound by its terms. You are therefore urged to review this document.

DATED: July 23, 2025.

**PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.**

By:/s/ *J A Patten*
    James A. Patten
    Attorney for Debtor