Kimberly Ross Clayson
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Rd. Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
Email: kclayson@taftlaw.com
Michigan State Bar Id: P69804

Burt W. Ward
JACKSON, MURDO & GRANT, P.C.
203 N. Ewing Street
Helena, MT 59601
Phone: (406) 513-1123
Email: bward@jmgattorneys.com
State Bar Id: 27181930

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re: | Case No. 1:25-bk-10010-BPH |
| KC TRANSPORT, LLC, | Chapter 11 |
| Debtor. | |

**LOEB TERM SOLUTIONS LLC'S MOTION FOR
ENTRY OF ORDER FOR RELIEF FROM THE AUTOMATIC STAY FOR CAUSE
AND FOR WAIVER OF PROVISIONS OF FED. R. BANKR. P. 4001(a)(3),
OR ALTERNATIVELY FOR ADEQUATE PROTECTION PAYMENTS**

Loeb Term Solutions, LLC ("Loeb"), pursuant to sections 361, 362, 363 of the Bankruptcy Code[1] and the District of Montana Local Rules of Bankruptcy Procedure 4001-1 (Bankr. D. Mont.) ("Local Rule"), moves for entry on order for relief from the Automatic Stay for cause and for waiver of the provisions of Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4001(a)(3), in order to exercise its state law remedies regarding the property of KC Transport, LLC (the "Debtor") for which Loeb has a first priority valid perfected security interest *inter alia*, titled

---

[1] The "Bankruptcy Code" shall mean Title 11, United States Code, section 101 *et seq*.

equipment and vehicles. Alternatively, Loeb requests entry of an order directing the Debtor to make adequate protection payments.

## PRELIMINARY STATEMENT

1. Loeb files this Motion seeking relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to recover its Collateral and exercise its state law remedies or alternatively, for adequate protection payments. Debtor has spent months in the above-captioned Chapter 11 case (the "<u>Bankruptcy Case</u>") and has enjoyed the use of Loeb's collateral without compensating Loeb for its use, accruing interest and material diminution in value. Loeb has worked with the Debtor to allow it time to conduct a sale of certain of Loeb's collateral and to restructure its business. That sale resulted in a drastic change in value of Loeb's collateral from Loeb's March 2025 appraisal. Now, Debtor has presented an infeasible plan that only further delays Loeb's right to payment without presenting projected income sufficient to fund payments to Loeb. On September 25, 2025, Loeb sought Debtor's consent to adequate protection payments and Debtor has failed to respond to Loeb's request for relief.

## JURISDICTION

2. This Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## LOCAL RULE 8 STATEMENT

4. In support of this request for relief, and consistent with the Local Rule 8, Loeb represents as follows:

1. The present balance owing to Loeb, excluding any precomputed interest or other unearned charges, is $1,405,250.72 as of the date of this Motion.

2. The date upon which the subject debt was incurred was August 9, 2024. *See* **Exhibit B**.

3. Loeb holds a perfected security interest or lien upon the following described property of the estate:

   Equipment and titled vehicles. An itemized list is attached hereto separately as Exhibit A.

4. The nature of Loeb's security interest, the date upon which the security interest was obtained, and the date upon which the security interest was perfected are as follows:

   Debtor and Loeb executed a Credit and Security Agreement dated as December 19, 2019, and Loeb perfected its security interest in the Collateral by being the named secured party on the Collateral titles.

5. A description of Loeb's collateral, including its location, is as follows:

   Equipment and titled vehicles. *See* **Exhibit A**. Collateral is in 3 different Debtor locations: a lot in Sidney, Montana, and two additional lots in Elko, Nevada.

6. The forced liquidation value of the remaining items that comprise Loeb's collateral is $431,000.00.

7. A description of, and the amounts due upon, any other security interests which have priority over that of Loeb are as follows:

   None.

8. Loeb alleges a post-petition payment default by the Debtor, the amount and date of the payments the Debtor is alleged to have failed to make are as follows:

<u>Debtor failed to make weekly post-petition payments each in the amount of $10,885.51, from January 28, 2025 to October 1, 2025 for a total 35 missed weekly payment in the amount of $379,942.85.</u>

**BACKGROUND**

5. On January 24, 2025, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "<u>Petition Date</u>").

6. On August 9, 2024, the Debtor executed a Fifth Amended and Restated Term Promissory Note (the "<u>Note</u>") in the stated principal amount of $1,688,292.27 in favor of Loeb (the "<u>Loan Amount</u>"). The Debtor agreed to repay the Note in full within 2 years of the date of the Note. The amortization schedule to the Note obligated Debtor to make weekly payments of $10,885.51.

7. The Debtor and Loeb executed a Credit and Security Agreement dated as December 19, 2019 (the "<u>Security Agreement</u>"). In the Security Agreement, the Debtor granted a security interest in, among other things, the Debtor's titled vehicles (the "<u>Collateral</u>") attached hereto as **Exhibit A**.

8. Loeb perfected its security interest in the Collateral by being the named secured party on the Collateral titles.

9. **Exhibit B** to this Motion are the Note and Security Agreement.

10. As of the Petition Date, the total outstanding unpaid balance including accrued and unpaid interest due from the Debtor was $1,515,246.40, not including Loeb's attorney fees and costs of collection.

11. Since the Petition Date, Debtor has not made any payments to Loeb under terms of the Note and the current outstanding indebtedness less credits for amounts applied from the

Debtor's Sale (defined below) is $1,405,250.72 as of the date of this Motion. Per diem interest is accruing at $757.23.

12. On April 8, 2025 Loeb filed its first *Motion to Modify the Stay* (the "First Motion to Modify") [Doc 27] seeking adequate protection payments from the Debtor. Debtor filed its Response in opposition to the First Motion to Modify

13. Shortly thereafter, on April 25, 2025 Debtor filed its first *Motion to Sell Property Free and Clear of Liens under Section 363(f)* (the "First Sale Motion") [Doc 36] seeking to sell some of Loeb's collateral and Loeb filed its response in opposition to the First Sale Motion.

14. The Debtor and Loeb subsequently withdrew their respective First Motion to Modify and First Sale Motion and reached terms to allow for Debtor to sell Loeb's collateral pursuant to an online auction through Debtor's proposed auctioneer, Steffes Group, Inc.

15. Consistent with the Parties' resolution, on July 1, 2025 Debtor filed its *Second Motion to Sell Property Free and Clear of Liens under Section 363(f)* (the "Second Sale Motion") [Doc 63]. Loeb initially filed a limited objection to the Second Sale Motion on the grounds of an inadequate marketing period of the online auction prior to its commencement and on other grounds.

16. Ultimately, Debtor and Loeb agreed to revised sale terms and on July 21, 2025, the Court entered an agreed *Order Approving Stipulation By and Between Debtor and Loeb Term Solutions, LLC* [Doc 75] which allowed for a longer marketing period prior to the commencement of the online auction (the "Sale").

17. The Sale was conducted as a live online auction allowing bidders to participate in the Auction from any location from August 21, 2025 through August 28, 2025.

18. The results of the auction provided $358,762.50 and revealed that Loeb's appraisal

values as of March 13, 2025 were over-stated as compared to the actual sale results.

19. As a result of the Sale, Loeb has revised its appraisal of the remaining collateral that Debtor intends to retain for its operations following confirmation of its plan of reorganization, the estimated forced liquidation value for the remaining of Loeb's collateral that was not a part of the Sale is $431,000.00.

20. On September 23, 2025, Debtor obtained preliminary approval of its Plan and Disclosure Statement. Loeb intends to object to Debtor's Plan on feasibility grounds *inter alia*, the Debtor lacks sufficient cash flow to fund its Plan.

21. Due to the material diminution in value of Loeb's collateral during the pendency of this Chapter 11 Case and the accruing interest and fees, on September 25, 2025, Loeb requested that Debtor provide adequate protection payments commencing on October 15, 2025, through the time that Debtor either confirms a Plan or its case is dismissed or converted. As of the date of this Motion, Debtor has not responded to Loeb's request for adequate protection payments.

## ARGUMENT

22. Section 362 of the Bankruptcy Code provides that a court may grant a party in interest relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

23. An alternative to granting relief from the automatic stay, courts may also allow a debtor to retain possession of secured collateral subject to payment of adequate protection payments made to the secured creditor.

24. Although "adequate protection" is not specifically defined in the Bankruptcy Code, section 361 of the Bankruptcy Code sets out three non-limiting examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or

replacement lien on other property, or 3) other relief that provides the indubitable equivalent. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) (citation omitted); *see In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) ("A review of the legislative history leads us to conclude that a debtor, in structuring a proposal of adequate protection for a secured creditor, '"should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights."'") (citing *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir. 1984)): *see also In re BLX Group, Inc.*, 419 B.R. 457, 470 (Bankr. D. Mont. 2009) ("The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy.") (citing *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987) (citations omitted).

25. The Bankruptcy Court for the District of Montana considered the appropriate measure for when adequate protection payments are necessary to properly compensate secured creditors in *In re The Lodge at Big Sky, LLC* explaining "[i]n a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value." 454 B.R. 138, 143–144 (Bankr. D. Mont. 2011) (citing 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.),* 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (additional citations omitted); see also *In re Farmer*, 257 B.R. 556, 560 (Bankr. D. Mont. 2000) ("If the value of the collateral decreases, the creditor is entitled to cash payments so that the value of its interest in the collateral remains constant." *First Federal Bank of California v Weinstein (In re Weinstein)*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998)).

26. Debtor does not contest the fact that the Collateral has suffered diminution in value

since the Petition Date. Debtor also does not contest that interest and fees due to Loeb under the terms of the Note have steadily accrued since the Petition Date. Notwithstanding both of these facts, Loeb has remained patient that it would be compensated for such diminution of value and the interest and fees due and owing. Given Debtor's failure to effectuate a sale that resulted in proceeds sufficient to offset Loeb's losses and fees due and owing, Loeb's patience has run dry.

27. Debtor is unable to offer "additional or replacement lien[s] on other property, or 3) other relief that provides the indubitable equivalent." *In re Mellor*, 734 F.2d at 1400. As such, its only option then is to periodic cash payment that offset the decrease in value of the Collateral and to chip away at the steadily accruing interest and fees.

28. In accordance with sections 361 and 363(e) of the Bankruptcy Code, Loeb lacks adequate protection because of the Debtor's continued use of the Collateral, its substantial depreciation during the pendency of this Bankruptcy Case and the lack of maintenance of the Collateral, failure to make post-petition payments on the Note, and to otherwise provide Loeb with any adequate protection payments.

29. Moreover, despite the Auction proceeds paid to Loeb in the amount of $358,762.50, Loeb is not adequately protected in its Collateral, and should be "insure[d] that [it] receives the value for which [it] bargained prebankruptcy." *BLX Group, Inc.*, 419 B.R. at 470. The circumstances here fit squarely under the reasoning of the Montana Bankruptcy Court in *The Lodge at Big Sky, LLC*, that adequate protection payments should "compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value." 454 B.R. 143–44.

30. Loeb's Collateral has seen material diminution in value from post-petition use, depreciation, and destruction. Measuring by the standards set forth in the Ninth Circuit and in the

Montana Bankruptcy Court, Loeb is entitled to receive adequate protection payment if Debtor remains in possession of its Collateral.

32. Loeb further represents that in the event the Court grants this Motion for relief, Loeb will seek foreclosure and liquidation of the above-described Collateral in accordance with applicable non-bankruptcy law. Upon disposition of such Collateral, Loeb will account for all proceeds to the Court, and trustee, if applicable, and agrees to turn over any proceeds in excess of Loeb's allowed secured claim to the Court, and trustee, if applicable.

32. To avoid need for a preliminary telephonic hearing, Loeb does consent to waiver of the 30-day rule set forth in 11 U.S.C. § 362(e).

WHEREFORE, for the reasons stated in this Motion, Loeb respectfully requests that the Court enter an order (i) granting Loeb relief from the automatic stay and waiving the 14-day stay described by Fed. R. Bankr. P. 4001(a)(3) or in the alternative; (ii) compelling Debtor to make adequate protections payments to Loeb in the amount of $379,942.85, plus weekly payments each in the amount of $10,855.51 commencing Wednesday October 8, 2025 and on the same day each week thereafter; and (iii) grant any and all other just and equitable relief justified in this matter.

DATED: October 7, 2025

Respectfully submitted,

/s/Kimberly Ross Clayson
Kimberly Ross Clayson

and

/s/Burt W. Ward
Burt W. Ward
*Counsel for Loeb Term Solutions, LLC*

NOTICE OF OPPORTUNITY TO RESPOND
AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The objecting party shall schedule the hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

**NOTICE OF HEARING**
**Date:** _____
**Time:** _____
**Location:** _____

      This contested matter shall be scheduled for hearing for the next hearing date scheduled in the division within which the case is filed. The date, time and location of the hearing can be obtained from the Clerk of Court or from the Court's website at [www.mtb.uscourt.gov.](http://www.mtb.uscourt.gov) If the motion indicates the creditor does not consent to waiver of the 30-day rule set forth in 11 U.S.C. § 362(e) and the next scheduled hearing date is thirty (30) days beyond the filing date of the motion for relief, then a preliminary hearing within such thirty (30) day period shall be scheduled by the responding party after such party contacts the Clerk of Court to confirm the preliminary telephone hearing date and time, which shall be set forth in the response.

      If you fail to file a written response to the above Motion to Modify Stay with the particularity required by Mont. LBR 4001-1(c), and request a hearing, within fourteen (14) days of the date of this Notice, with service on the undersigned and all parties entitled to service under all applicable rules, then your failure to respond or to request a hearing will be deemed an admission that the motion for relief should be granted without further notice or hearing.

      DATED this 8th day of October, 2025.

                                                          /s/Kimberly Ross Clayson
                                                          Kimberly Ross Clayson

                                                          and

                                                          /s/Burt W. Ward
                                                          Burt W. Ward
                                                          *Counsel for Loeb Term Solutions, LLC*

CERTIFICATE OF SERVICE

      I, the undersigned, do hereby certify under penalty of perjury that on the ___ day of October, 2025, a copy of the foregoing was served by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or by mail on the following parties:

KC Transport, LLC
117 7th Ave NW
Sidney, MT 59270

      /s/*Tina M. Torni*
      Tina M. Torni

[Must comply with Mont. LBR 9013-1(d)(2), by reflecting the name and address of each party served, and by being signed "under penalty of perjury" and by identifying the document served.]